IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Court of Master Sommeliers Americas,<br><br>               Plaintiff,<br>v.<br><br>Ashley Broshious and How to Drink Wine,<br><br>               Defendants. | Case No. 2:25-cv-05255-RMG<br><br>**ORDER AND OPINION** |

       This matter is before the Court on Plaintiff's motion to dismiss (Dkt. No. 21-1) Defendants' Amended Counterclaim (Dkt. No. 17) with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth below, Plaintiff's motion to dismiss with prejudice is granted.[1]

**I.    Background**

       Plaintiff, a California corporation with its principal place of business in California, is a "premier certifying organization for sommeliers and beverage professionals worldwide." (Dkt. No. 1, at ¶¶ 2,4). Among other services, Plaintiff offers aspiring wine stewards the opportunity to take educational courses and three levels of certification examinations that, if passed, "signal exceptional competence and professionalism in wine and beverage service." *Id*. at ¶ 10. The test components are confidential and proprietary, and test takers must agree—prior to taking the

---

[1] Plaintiff also filed a motion to stay discovery pending the resolution of the instant motion. (Dkt. No. 22).

examination—not to disclose any of the test material. *Id*. at ¶ 20. Plaintiff has also obtained several federally registered trademarks in connection with its services ("Marks").[2] *Id*. at 4-5.

Defendant Broshious, a resident of South Carolina, was a student enrolled in Plaintiff's program and earned several certifications for passing Plaintiff's examinations. *Id*. at ¶¶ 5, 23. In 2023, she started Defendant How to Drink Wine, a corporation with its principal place of business in South Carolina, "to offer preparation services to aspiring Sommeliers, including those who intended to sit for Plaintiff's examinations." (Dkt. No. 17, at ¶¶ 6, 26). Defendants have used Plaintiff's Marks "to identify that Defendants offer preparation services associated with Plaintiff's exams." *Id*. at ¶ 27. Additionally, Defendants have disclosed information about the wine industry that would enable its clients to pass examinations like those offered by Plaintiff. *Id*. at ¶¶ 30, 40.

Plaintiff made several fruitless attempts to contact Defendants about its unauthorized use of Plaintiff's intellectual property. (Dkt. No. 1, at ¶¶ 37-39). Thereafter, Plaintiff sent a cease-and-desist letter, requesting that Defendants discontinue its unauthorized use of Plaintiff's Marks and disclosure of Plaintiff's examination materials. *Id*. Plaintiff also revoked Defendant Broshious's certification credentials and suspended her from participating in programs offered by Plaintiff. *Id*. at ¶ 39. Notwithstanding, Defendants continued to use Plaintiff's Marks in connection with its services and Defendant Broshious continued to hold herself out as a being affiliated with Plaintiff. *Id*. at ¶ 41.

---

[2] Among others, Plaintiff has federal registrations for the following trademarks: COURT OF MASTER SOMMELIERS, Registration No. 2,384,781; COURT OF MASTER SOMMELIERS AMERICAS, Registration No. 4,273,271; MASTER SOMMELIER, Registration No. 4,473,561.

On June 10, 2025, Plaintiff filed this action against Defendants, alleging: (1) Trademark Infringement in violation of the Lanham Act, 15 U.S.C. § 1114; (2) False Designation of Origin and Unfair Competition in violation of the Lanham Act, 15 U.S.C. § 1125(a); (3) Trade Secret Misappropriation in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836; (4) Trade Secret Misappropriation in violation of the South Carolina Trade Secrets Act, S.C. Code Ann. § 39-8-10 *et seq.*; (5) Breach of Contract against Defendant Broshious; (6) Unfair and Deceptive Trade Practices in violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10 *et seq.*; (7) Common Law Unfair Competition and Passing Off; (8) Common Law Unjust Enrichment; and (9) Declaratory Judgment pursuant to 28 U.S.C. §§ 2201-2202. (Dkt. No. 1). On July 24, 2025, Defendants filed an Answer, which included counterclaims against Plaintiff for Intentional Interference with Contract Relations and Breach of Contract ("Original Counterclaim"). (Dkt. No. 11). Plaintiff filed a motion to dismiss the Original Counterclaim on the same bases as the instant motion. (Dkt. No. 15). However, the Court denied that motion as moot (Dkt. No. 20) because Defendants subsequently filed an Amended Answer, asserting the same counterclaims ("Amended Counterclaim") as the Original Counterclaim. (Dkt. No. 17). Subsequently, Plaintiff filed this motion to dismiss Defendants' Amended Counterclaim under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim for which relief can be granted on. (Dkt. No. 21-1). Defendants responded (Dkt. No. 23) and Plaintiff replied (Dkt. No. 26). This motion is now ripe for disposition.

## II.    Legal Standard

### A.  Rule 12(b)(1)

A Rule 12(b)(1) motion for lack of subject matter jurisdiction raises the fundamental question of whether a court has jurisdiction to adjudicate the matter before it. Fed. R. Civ. P.

3

12(b)(1). In determining whether jurisdiction exists, the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id*. (citation omitted). The party asserting the claim bears the burden of proof on questions of subject matter jurisdiction. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (citation omitted).

### B. Rule 12(b)(6)

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citation omitted). *See also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." (citation and punctuation omitted)). To be legally sufficient, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion "should not be granted unless it appears certain that the [pleader] can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the [pleader]." *Id*. (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.

4

544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted).

### III. Discussion

#### A. Subject Matter Jurisdiction

Federal district courts have limited jurisdiction. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). "The character of the controversies over which federal judicial authority may extend are delineated in Art. III, § 2, cl. 1." *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982). "Jurisdiction of the lower federal courts is further limited to those subjects encompassed within a statutory grant of jurisdiction." *Id*. Accordingly, "the district courts may not exercise jurisdiction absent a statutory basis." *Exxon Mobil*, 545 U.S. at 552.

Congress granted federal courts original jurisdiction over two general types of cases: cases arising under federal law and cases between citizen of different states where the amount in controversy exceeds $75,000, exclusive of interests and cost. *See* 28 U.S.C. §§ 1331 & 1332. These jurisdictional grants are known as "federal-question jurisdiction" and "diversity jurisdiction," respectively. "Each serves a distinct purpose: Federal-question jurisdiction affords parties a federal forum in which to vindicate federal rights, whereas diversity jurisdiction provides a neutral forum for parties from different States." *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 438 (2019) (citation and punctuation omitted). In addition to granting jurisdiction over federal-question and diversity cases, Congress has authorized district courts to hear additional claims that, while lacking an independent basis for federal jurisdiction, are "so related to claims in the action" giving rise to original jurisdiction that "they form part of the same case or controversy." 28 U.S.C. § 1367(a).

*See also Exxon Mobil*, 545 U.S. at 552 ("Although the district courts may not exercise jurisdiction absent a statutory basis, it is well established—in certain classes of cases—that, once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy."). This type of jurisdictional basis is known as "supplemental jurisdiction," which generally permits federal courts to "attach" state law claims—such as those asserted in the Amended Counterclaim—to claims over which the court has original jurisdiction, where appropriate. *See* § 1367(c) (outlining instances where a district court may decline to exercise supplemental jurisdiction). In practice, supplemental jurisdiction promotes judicial economy by allowing the resolution of factually intertwined claims in a single forum, thereby conserving judicial time and resources.

Accordingly, the Court will consider each jurisdictional basis to determine whether it has jurisdiction over the claims asserted in the Amended Counterclaim.

1. *Federal Question*.

"As is well settled, federal question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the . . . properly pleaded complaint." *Wallis v. Boeing Co.*, No. 9:19-cv-1115-RMG, 2019 WL 4931365, at *2 (Oct. 10, 2019) (citation and punctuation omitted). The complaint must show that the claim is one "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Here, Defendants' allegations do not assert that Plaintiff has violated a federal statute or constitutional provision. Instead, Defendants allege state law causes of action for Intentional Interference with Contract Relations and Breach of Contract. Therefore, there is no federal-question jurisdiction over Defendants' claims.

2. *Diversity Jurisdiction.*

As noted above, a federal court has original jurisdiction over cases where there is complete diversity of citizenship between the parties and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). At issue here is the latter requirement that demands that more than $75,000 be at stake. Plaintiff argues that Defendants do not meaningfully allege that the amount in controversy exceeds $75,000 and that the allegations in the Amended Counterclaim are conclusory and largely irrelevant, as the facts Defendants provide are about its business dealings in general, rather than about the specific harm caused by Plaintiff. (Dkt. No. 21-1). In response, Defendants argue that because Plaintiff revoked Defendant Broshious's credentials and interfered with Defendants' contractual relations, Defendants' ability to generate its yearly revenue of more than $75,000 is now in jeopardy. (Dkt. No. 23).

"The party invoking diversity jurisdiction bears the burden of establishing that the amount-in-controversy requirement is satisfied." *Andersen v. Vagaro, Inc.*, 57 F.4th 11, 14 (1st Cir. 2023) (citation omitted). "[T]he sum claimed by the [party] controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938) (citation omitted). While a general allegation that the amount in controversy exceeds the jurisdictional requirement may be sufficient, when challenged, the party asserting diversity jurisdiction "has the burden of alleging with sufficient particularity facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount." *Dept. of Recreation & Sports of P.R. v. World Boxing Ass'n*, 942 F.2d 84, 88 (1st Cir. 1991) (citation omitted). *See also Burns v. Mass. Mut. Life Ins. Co.*, 820 F.2d 246, 248 (8th Cir. 1987) ("While a [party's] good faith

allegation is to be taken as true unless challenged, a [party] who has been challenged as to the amount in controversy has the burden of showing that the diversity jurisdiction requirements have been met." (citation omitted)).

"To fend off a jurisdictional challenge, a [party] may amend the complaint or submit additional documentation, such as affidavits, medical reports, or interrogatories." *Andersen*, 57 F.4th at 15 (citation omitted). "[M]erely reiterating general descriptions of damages is insufficient, particularly when a [party] is put on notice of the complaint's deficiencies by a FRCP 12(b)(1) motion to dismiss." *Id*. (citation omitted).

Here, Plaintiff challenged the sufficiency of Defendants' jurisdictional pleading, and thus, Defendants had the burden of offering particular facts that support its contention that the amount in controversy exceeds $75,000. Defendants have not met that burden. In its Original Counterclaim, Defendants stated no amount in controversy, only providing a general description of its damages. (Dkt. No. 11). After being put on notice by Plaintiff's initial Rule 12(b)(1) motion, Defendants only added further generalizations of its damages in the Amended Counterclaim,[3] failing to provide any specific facts that show that there is more than $75,000 at stake. And instead of providing particular evidence in response to the instant motion, Defendants' response brief

---

[3] In its Amended Counterclaim Defendants stated that:

> Broshious generates in excess of $75,000 per year from her educational services. Her ability to generate this revenue depends on her reputation, including her ability to hold out her CMS credentials. [Plaintiff's] improper revocation of Broshious' credentials limits and/or prevents Broshious from generating revenue from educational services, causing her damages that exceed $75,000.

(Dkt. No. 17, at ¶ 145).

merely reiterated what was said in its Amended Counterclaim, asserting: (1) Defendants "sufficiently allege the statutory amount in controversy"; (2) "Broshious alleges that she generates more than $75,000 a year from her educational services and that, as a result of [Plaintiff's] improper revocation of Broshious' credentials, Broshious' ability to provide these educational services has been significantly reduced and/or totally eliminated"; and (3) "[b]ecause of [Plaintiff's] improper and intentional interference with Broshious' contractual relationships, Broshious' ability to earn a living from her occupation, from which she generates over $75,000 per year, is in jeopardy." (Dkt. No. 23). These conclusory statements alone are insufficient to carry Defendants' burden.

Admittedly, the Amended Complaint generally states the cost of Defendants' services (Dkt. No. 17, at ¶ 139), but critically absent is any numeric substantiation or evaluation that the claims at issue *here* have resulted in the loss of revenue or damages in excess of $75,000. *Cf. Boruff v. Platinum Luxury Auctions LLC*, No. 6:24-cv-2570-TMC, 2024 WL 5667303, at *3 (D.S.C. Dec. 3, 2024) (concluding that the requisite jurisdictional amount for a counterclaim of breach of contract was satisfied where the defendant presented an affidavit showing that the plaintiff was paid an amount in excess of the jurisdictional amount). *See also Abdel-Aleem v. OPK Biotech LLC*, 665 F.3d 38, 43-45 (1st Cir. 2012) (observing that the plaintiff only generally described his damages and did not provide a calculation of alleged lost wages or any support for his claim of legal fees); *Hardemon v. City of Boston*, 144 F.3d 24, 26 (1st Cir.1998) (concluding that the amount in controversy was sufficiently established based on affidavit attached to amended complaint itemizing lost wages and other damages claimed). Moreover, to the extent Defendants rely on its assertion for the Intentional Interference claim that its courses are $1,295 (Dkt. No. 17, at ¶ 139), and that Plaintiff contacted one of Defendants' clients to inform them of Defendants'

9

alleged misappropriation of examination materials—leading to that client not working with Defendants—such claims remain insufficient. *Id*. at ¶¶ 160-63. Even assuming the truth of Defendants' assertion that Plaintiff's conduct caused the loss of a client, Defendants allege the loss of a *single* client who would have paid a fee that is well below the statutory jurisdictional threshold. And while "federal courts must . . . look to state law to determine the nature and extent of the right to be enforced in a diversity case," the relief which Defendants request—damages—necessarily requires that the party alleging the injury provide some evidence outlining the extent of its harm. *Abdel-Aleem*, 665 F.3d at 43 (citation and punctuation omitted). *See also Whisenant v. James Island Corp.*, 281 S.E.2d 794, 796 (S.C. 1981) ("Generally, in order for damages to be recoverable, the evidence should be such as to enable the court or jury to determine the amount thereof with reasonable certainty or accuracy."). Defendants have not cited—nor has the Court identified—any state cases that define the value of an Intentional Interference or Breach of Contract claim, such that the Court could reasonably infer the amount at stake for Defendants' claims. Therefore, the Court finds that Defendants have failed to meet its burden of establishing the amount in controversy required for diversity jurisdiction.

    3. *Supplemental Jurisdiction*.

"Where district courts have original jurisdiction over a civil action, 28 U.S.C. § 1367 provides they 'shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'" *Sawyer v. Tidelands Health ASC, LLC*, No. 21-2161, 2023 WL 4026089, at *4 (4th Cir. June 15, 2023) (quoting 28 U.S.C. § 1367(a)). "[T]he test for determining whether state and federal claims form part of the same constitutional case or controversy is set forth in *United Mine Workers of America v. Gibbs*." *Axel*

*Johnson, Inc. v. Carroll Carolina Oil Co.*, 145 F.3d 660, 662 (4th Cir. 1998) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966)). "The *Gibbs* test requires the state and federal claims to 'derive from a common nucleus of operative fact,' 'such that [a pleader] would ordinarily be expected to try them all in one judicial proceeding.'" *Sawyer*, 2023 WL 4026089, at *4 (quoting *Gibbs*, 383 U.S. at 725). There is no dispute as to whether this Court has original jurisdiction over Plaintiff's claims, whether under federal question or diversity jurisdiction. The issue, then, is whether Defendants' claims, alleging Intentional Interference with Contract Relations and Breach of Contract, arise from a common nucleus of operative fact as Plaintiff's claims.

Plaintiff argues that the Complaint concerns Defendants' confusing branding and misappropriation of trade secrets, while Defendants' interference claim "arises from Broshious' purported third-party contracts with her students, [Plaintiff's] decision to revoke her credentials, and alleged communications between [Plaintiff] and its [student]," and Defendants' contract claim centers on "vague allegations that [Plaintiff] agreed not to 'improperly revoke[]' Broshious' certification and retaliated against her." (Dkt. No. 21-1). In response, Defendants argue that Plaintiff's trademark infringement and trade secret misappropriation claims and Defendants' interference claim both relate to Plaintiff's assertion of its intellectual property rights. Moreover, Defendants argue, its contract claim and Plaintiff's trademark infringement, breach of contract, unfair competition, unjust enrichment, and declaratory judgment claims all relate to the rights of the parties to use the Marks. (Dkt. No. 23).

The Court begins with the Intentional Interference claim. The crux of Plaintiff's third, fourth, fifth, sixth, and eighth causes of action is that Defendants allegedly acquired Plaintiff's confidential certification examination materials by improper means and sold or disclosed that information to individuals preparing to take Plaintiff's examination. (Dkt. No. 1). In turn,

Defendants' Intentional Interference claim involves Plaintiff allegedly contacting one of Defendants' clients and "advis[ing] the student, without justification, to breach the contract with Broshious because her services allegedly violated [Plaintiff's] rights under its rules of ethics." (Dkt. No. 17, at ¶ 161).

For Plaintiff's misappropriation claims to succeed, it must be shown that Defendants disclosed Plaintiff's confidential examination materials. Conversely, for Defendants' interference claim to prevail, it must be shown that Plaintiff acted without justification in urging the third-party to breach the contract. Accordingly, both claims hinge on whether Defendants actually disseminated Plaintiff's examination materials. If so, Plaintiff not only prevails on its claims, but the alleged interference may also be justified because it was for a legitimate business purpose, thus, defeating Defendants' Intentional Interference claim. *See Sea Island Food Grp., LLC v. Yaschik Dev. Co.*, 857 S.E.2d 902, 906 (S.C. Ct. App. 2021) (quoting *Gailliard v. Fleet Mortg. Corp.*, 880 F. Supp. 1085, 1089 (D.S.C. 1995) ("Interference with a contract is justified when it is motivated by legitimate business purposes.")). Moreover, both claims would require much of the same evidence, such as testimony from the student regarding what information they received from Defendants, the substance, if any, of the student's conversation with Plaintiff, and the nature and content of Defendants' courses. *See Nicopior v. Moshi Moshi Palm Grove*, LLC, 375 F. Supp. 3d 1278, 1286-87 (S.D. Fla. 2019) (concluding that the court had supplemental jurisdiction over the defendant's counterclaims in part because the resolution of the parties' claims would "involve much of the same witnesses and evidence"). Thus, the interference claim is part of the "same case or controversy" and derives from a "common nucleus of operative fact" as the relevant claims in the Complaint. *See Crater Corp. v. Lucent Techs., Inc.*, 423 F.3d 1260, 1264 (Fed. Cir. 2005) (noting that where the district court possessed original jurisdiction over the patent infringement

claim, it also properly exercised supplemental jurisdiction over the related state law claims for breach of contract and misappropriation of trade secrets); *3D Sys., Inc. v. Aarotech Lab., Inc.*, 160 F.3d 1373, 1377 (Fed. Cir. 1998) (trade libel and unfair competition claims based on state law go "hand-in-hand" with federal patent infringement claims and may be brought in federal district court).

Turning next to Defendants' Breach of Contract claim, the Court also finds that there is a common nucleus of operative fact between Defendants' claim and the relevant claims in the Complaint. Plaintiff's first, second, seventh, eighth, and ninth causes of action arise from Defendants' alleged unauthorized use of the Marks in connection with its services, thereby creating a likelihood of confusion. (Dkt. No. 1). On the other hand, Defendants' Amended Counterclaim asserts that the parties agreed that "Broshious would be entitled to certain certifications by [Plaintiff] provided that Broshious pass the certification examination, pay the fee and otherwise satisfy all conditions precedent to certification" and that "the agreements did not allow the certifications to be revoked." (Dkt. No. 17, at ¶ 169). Relatedly, Defendants contend that Defendant Broshious's credentials entitled Defendants to "hold out" those credentials when advertising its services. *Id*. at ¶ 127. At bottom, Plaintiff's trademark infringement claims and Defendants' contract claim involve the same issue: whether Defendants' use of the Marks was unlawful. That is, if the alleged agreement did not provide for a revocation of Defendant Broshious's credentials, amounting to a breach by Plaintiff and thus leaving intact Defendants' ability to hold itself out as a "Master Sommelier," then Plaintiff's trademark infringement likely fails.

Judicial economy also supports the exercise of jurisdiction under these circumstances. While the Intentional Interference and Breach of Contract claims certainly raise additional issues,

it would be unjust and inefficient to require the parties to litigate this cause of action in a separate state court action. Accordingly, the Court finds that it has supplemental jurisdiction over the Amended Counterclaim. *See Promisel v. First Am. Artificial Flowers*, 943 F.2d 251, 254 (2d Cir. 1991), *cert. denied*, 502 U.S. 1060 (1992) (noting that the exercise of supplemental jurisdiction over state law claims is not automatic, but "is a favored and normal course of action"). *See also Schroeder v. West*, 212 F.3d 1265, 1270 (Fed. Cir. 2000) ("The notions of efficiency of judicial economy and avoidance of piecemeal litigation provide the basis for supplemental jurisdiction." (citation and punctuation omitted)).

However, the Court's inquiry does not end there. While the Amended Counterclaim may "be here," the Court must still determine if it may "stay here."

**B. Failure to State a Claim**

Defendant moves to dismiss Defendants' state law claims for Intentional Interference and Breach of Contract. (Dkt. 21-1). Plaintiff argues that the Amended Counterclaim fails to specifically allege sufficient facts that satisfy the essential elements of both claims. *Id*. Defendants respond, opposing the motion on the grounds that the Amended Counterclaim has sufficiently alleged facts to satisfy the elements of Intentional Interference and Breach of Contract. (Dkt. No. 23).

1. *Intentional Interference with Contract Relations*.

In South Carolina, "[t]he elements of a cause of action for tortious interference with contract are: (1) existence of a valid contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification; and (5) resulting damages." *Camp v. Springs Mortg. Corp.*, 426 S.E.2d 304, 305 (S.C. 1993) (citation omitted). "[A]n action for tortious interference protects the property rights of the parties to a contract against unlawful

interference by third parties." *Threlkeld v. Christoph*, 312 S.E.2d 14, 15 (S.C. Ct. App. 1984). "[T]he alleged act of interference must influence, induce, or coerce one of the parties to the contract to abandon the relationship or breach the contract." *Bocook Outdoor Media, Inc. v. Summey Outdoor Adver., Inc.*, 363 S.E.2d 390, 394 (S.C. Ct. App. 1987), *overruled on other grounds by*, *O'Neal v. Bowles*, 431 S.E.2d 555 (S.C. 1993) (citation omitted).

Viewed in the light most favorable to Defendants, the Amended Counterclaim offers the following factual allegations in support of the interference claim: On September 12, 2024, Plaintiff requested Defendants' client list. Plaintiff subsequently contacted one of Defendants' clients and informed her that she should terminate her contract with Defendants because Defendants' services violated Plaintiff's intellectual property rights in its Marks and examination materials. On May 6, 2025, that student informed Defendants that she "would no longer work with Broshious" because of Plaintiff's allegations, resulting in Defendants "los[ing] the fees for this student." The Amended Complaint alleges that Plaintiff acted deliberately to stop Defendants from providing educational services, possibly due to financial ties with another organization providing similar educational services. Defendants further allege that "[s]tudents who take Broshious' classes enter a contract with her" and that Plaintiff "has knowledge of these contracts." (Dkt. No. 17). Here, even assuming Defendants have sufficiently pleaded facts to satisfy the other elements of its Intentional Interference claim, absent from the Amended Counterclaim are any facts showing that Plaintiff interfered without justification.

"Interference with a contract is justified when it is motivated by legitimate business purposes." *Sea Island Food*, 857 S.E.2d at 906 (citation omitted). "Generally, there can be no finding of intentional interference with . . . contractual relations if there is no evidence to suggest any purpose or motive by the [alleged interferer] other than the proper pursuit of its own

15

contractual rights with a third party." *Id*. (citation omitted). "Examples of improper methods include slander, sabotage, violence, fraud, and misrepresentation or deceit." *Id*. (citation omitted).

Defendants' Amended Counterclaim asserts that Plaintiff allegedly interfered with its contract because Defendants' services "violated [Plaintiff's] rights under its rule of ethics." (Dkt. No. 17, at ¶ 161). In essence, Defendants contend that it was improper for Plaintiff to interfere with Defendants' contract in order to prevent the continued dissemination of Plaintiff's trade secrets: the confidential certification examination materials.

This contention is flawed. It erroneously assumes that Plaintiff did not have the right—if not the obligation—to take all reasonable measures to prevent the misappropriation of its intellectual property. *See Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 983 (8th Cir. 2008) ("Generally, a [party's] actions are justified if it pursues its legal rights via legal means." (citation omitted)). Indeed, federal and state trade secret law necessitates that for information to be considered a trade secret, the party claiming as much must employ all reasonable efforts to protect the secrecy of that information. *See* S.C. Code Ann. § 39-8-20(5)(a)(ii) (providing that information may be a trade secret only if it, among other requirements, "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy"); 18 U.S.C. § 1839(3)(A) (noting that information to be considered a trade secret, its owner must "take[] reasonable measures to keep such information secret"). The reason for this requirement is obvious. A trade secret "derives independent economic value, actual or potential, *from not being generally known to*, and *not being readily ascertainable through proper means* by, another person who can obtain economic value from the disclosure or use of the information." *Prysmian Cables & Sys. USA, LLC v. Szymanski*, 573 F. Supp. 3d 1021, 1042 (D.S.C. 2021) (emphasis supplied) (citation and punctuation omitted).

16

Here, Defendants admit to discussing Plaintiff's test "to determine how [Defendants] c[ould] improve [its] services and to determine if there were problems encountered in the exams," violating Plaintiff's Code of Conduct. (Dkt. No. 17, at ¶ 32). Accordingly, after purportedly contacting one of Defendants' clients and developing the reasonable belief that its intellectual property was being misappropriated, Plaintiff acted within its legal right to stop such conduct by informing the client of Defendants' misappropriation. Had it not, Plaintiff could have not only lost the economic value of its examination materials, but also its ability to prevent others from misappropriating them, which—in the Court's view—is sufficient justification for interfering with a contract. Thus, Defendants' allegation that Plaintiff interfered with the purported contract in order to stop the continued violation of its intellectual property rights fails to show that Plaintiff acted without justification. Even more, Defendants fail to sufficiently plead facts that show that Plaintiff's actions were improper or lacked a legitimate business purpose. *See Sea Island*, 857 S.E.2d at 906 ("Interference with a contract is justified when it is motivated by legitimate business purposes."). *See also Select Comfort Corp. v. Sleep Better Store, LLC*, 838 F. Supp. 2d 889, 894 (D. Minn. 2012) (concluding that the plaintiff failed to state a claim for which relief can be granted on its tortious interference claim, where the defendant trademark owner contacted the third party because it had "a good faith belief that its rights were being infringed" (citation omitted)). Therefore, the Court finds that Defendants have failed to sufficiently plead that Plaintiff interfered without justification, and thus Defendants have failed to state a claim for which relief can be granted on this basis.

2. *Breach of Contract*.

Under South Carolina contract law, a party must establish three elements to prove breach of contract: (1) a binding contract entered into by the parties; (2) breach or unjustifiable failure to

perform the contract; and (3) damage as a direct and proximate result of the breach. *See Fuller v. E. Fire & Cas. Ins. Co.*, 124 S.E.2d 602, 610 (S.C. 1962) (citation omitted). "Certain terms, such as price, time and place, are considered indispensable and must be set out with reasonable certainty." *McPeters v. Yeargin Constr. Co.*, 350 S.E.2d 208, 211 (S.C. Ct. App. 1986) (citation omitted). "Even if the parties intend to be bound by an agreement, the absence of material terms renders the agreement unenforceable." *Civ. Eng'g Consulting Servs. Inc. v. Boggs Paving, Inc.*, No. 3:16-cv-2540-JFA, 2017 WL 11285240, at *2 (D.S.C. Aug. 8, 2017) (citing *Stevens & Wilkinson of S.C., Inc. v. City of Columbia*, 762 S.E.2d 696, 701 (S.C. 2014)).

Defendants allege that there was a binding agreement based on the following: Defendant Broshious paid a fee to take Plaintiff's certification examination; she passed the examination; and she met certification requirements in exchange for receiving and holding specific credentials. Defendants claim that Plaintiff allegedly breached this agreement by improperly revoking Defendant Broshious's certifications—something Defendants claim the contract did not allow—particularly after she filed a whistleblower complaint, which she claims violated Plaintiff's non-retaliation obligations. As a result, Defendants suffered damages, including harm to Defendant Broshious's ability to work and earn a living. (Dkt. No. 17).

Despite these contentions, Defendants' Amended Counterclaim is devoid of any agreed upon price or method to be employed to ascertain a price, much less the terms of the alleged agreement. The alleged actions and intentions of the parties do not render an agreement enforceable when a material term such a price is absent. *See, e.g.*, *Rose Elec., Inc. v. Cooler Erectors of Atlanta, Inc.*, 794 S.E.2d 382, 385-86 (S.C. Ct. App. 2016) ("This evidence supports the inference that [the parties] intended to be bound by their agreements; however, the missing price term is fatal to finding an express contract . . . ." (citation omitted)). Accordingly, because

the Amended Counterclaim fails to allege, among other things, a price or fixed method for ascertaining a price, it has likewise failed to allege the existence of a binding contract. Therefore, Defendants have failed to state a claim for Breach of Contract.

### C. Dismissal with Prejudice

"[C]ourts have held that, unless otherwise specified, a dismissal for failure to state a claim under Rule 12(b)(6) is presumed to be both a judgment on the merits and to be rendered with prejudice." *Palmetto Design Assocs., Inc. v. B G Framing Co.*, No. 0:20-cv-04234-JMC, 2021 WL 1227086, at *2 (D.S.C. Apr. 1, 2021) (citation omitted). However, "if amendment could cure the defects in the [party's] case, then courts typically allow the [party] an opportunity to file an amended pleading," rather than dismissing a claim with prejudice. *Stoudemire v. Robertson*, No. 7:18-cv-2839-JFA-MGB, 2018 WL 10035799, at *6 (D.S.C. Nov. 19, 2018) (citation and punctuation omitted).

Here, Defendants have had an opportunity to amend its pleading once and have still failed to plead sufficient facts to support a claim for which relief can be granted. Additional time for Defendants to include more factual material would only prejudice Plaintiff and further delay this action. Therefore, the court grants Plaintiff's motion to dismiss with prejudice Defendants' Amended Counterclaim.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion to dismiss (Dkt. No. 21-1) and **DENIES AS MOOT** Plaintiff's motion to stay (Dkt. No. 22). Defendants' Amended Counterclaim (Dkt. No. 17) is **DISMISSED WITH PREJUDICE**.

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel

                                                          Richard Mark Gergel
                                                          United States District Judge

October 8, 2025
Charleston, South Carolina